HOUSTON, Justice.
The plaintiff, Melba Cates, appeals from a summary judgment for the defendant, Colbert County-Northwest Alabama Healthcare Authority, d/b/a Helen Keller Memorial Hospital (“the hospital”), in her action to recover damages for medical malpractice. We reverse and remand.
The plaintiff entered the hospital to have abdominal surgery. During that operation, and while under sedation, she was restrained with straps over her forearms. After she awoke from the operation, and before she was discharged from the hospital, she experienced pain and a loss of function in her right arm and hand. She was subsequently diagnosed as having a compressed nerve in her right arm, and she underwent three operations in an attempt to correct the damage. The plaintiff, who is right-handed, continues to have pain and has lost partial use of her right arm and hand. The plaintiff had had no problems with her right arm and hand before she entered the hospital for the abdominal surgery. There is no evidence of a congenital defect in her right arm that could have caused the nerve damage, and she was not involved in a strenuous exercise program before her abdominal surgery that could have contributed to her injury.
The plaintiff alleged that hospital personnel negligently put excessive pressure on her arm during the operation and thereby caused the nerve damage. The trial court entered a summary judgment for the hospital, concluding that the evidence was insufficient to show that the plaintiffs injury was proximately caused by negligence on the part of the hospital’s personnel. Thus, the sole issue presented for our review is whether the plaintiff presented substantial evidence, see Ala.Code 1975, § 6-5-548 (part of the Alabama Medical Liability Act of 1987), that the nerve damage to her arm was proximately caused by negligence on the part of the hospital’s personnel. “Substantial evidence” is defined in § 6-5-542(5) as “that character of admissible evidence which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed.” See, also, Leonard v. Providence Hospital, 590 So.2d 906 (Ala.1991).
It is well settled that when the defendant in a medical malpractice case moves for a summary judgment and makes the requisite prima facie showing of nonlia-bility, as the hospital did in this case, the plaintiff, in order to avoid the entry of a summary judgment for the defendant, must present substantial evidence indicating that the alleged negligence (the breach of the appropriate standard of care) probably caused the injury. In determining whether a summary judgment for the defendant was proper, the reviewing court must view the *241 evidence in a light most favorable to the plaintiff. Leonard v. Providence Hospital. It is also well settled that evidence indicating merely that the alleged negligence was one of several possible causes of the injury is not sufficient. We have stated that the evidence produced by the plaintiff must have “selective application” to one theory of causation. See Bradford v. McGee, 534 So.2d 1076 (Ala.1988).
After carefully examining the evidence presented by the plaintiff, and viewing it in the light most favorable to her, we conclude that a jury question was presented as to whether negligence on the part of the hospital’s personnel proximately caused her injury. The undisputed evidence tends to show that the plaintiff had no problems with her right arm and hand before she underwent the abdominal surgery; that she had not engaged in strenuous exercise before her surgery that could have caused her nerve damage; that she had no signs of a congenital defect that could have caused the injury; that straps were placed on her arms while she was sedated; and that she experienced pain and a loss of function in her right arm and hand shortly after the surgery and before her discharge from the hospital. From this evidence even a layman could reasonably infer that something happened to the plaintiffs arm during the surgery. In addition to this evidence, however, the plaintiff introduced the deposition testimony of Dr. James Hoekenberry, a licensed, board certified general surgeon.[1] Dr. Hoekenberry testified by affidavit that in his opinion “[the plaintiffs] nerve injury and resulting] damages were a result of a traumatic compression and injury to the interior interosseous nerve of her right arm, which occurred during the [abdominal] surgery.” Dr. Hoekenberry also testified that “[the plaintiffs] injury was not ‘spontaneous,’ occurring for some unknown reason other than nerve compression which occurred during surgery.” Finally, Dr. Hoekenberry stated that the kind of pressure that could cause an injury like the plaintiffs would not necessarily result in bruising or swelling (neither of which was present when the plaintiff awoke after the surgery) and that the “occurrence of a traumatic, nerve compression injury to the interior interosseous nerve during surgery, causing the injuries [the plaintiff] suffered, [was], in [his] opinion, [the result of a deviation from] the standard of care acceptable in the medical community.” Dr. Hock-enberry testified by deposition as follows:
“Q. In your opinion, Dr. Hoekenberry, based on the records that you have reviewed and have been questioned about by [the defendant’s attorney] and the possibilities that in your knowledge exist for injury to this nerve that we are talking about here today, do you have an opinion as to whether or not with any medical certainty a standard of care, medical care, for [the plaintiff] was breached in this case?
[[Image here]]
“A. Yes.
“Q. And just again for clarification purposes, tell us in your opinion how that standard of care was breached.
[[Image here]]
“A. Well, sometime during ... the procedure traumatic compression was applied to the nerve, which led to its damage and subsequent degeneration of the muscular body of the flexor pollicis longus with loss of flexion of the last phalanx of the thumb.
[[Image here]]
“Q. In your opinion, based on your review of the records and [the plaintiffs] deposition, would there be any way within a reasonable medical certainty that this injury could have occurred spontaneously?
“A. No, sir.”
We are fully aware of the hospital’s strenuous contention that the evidence does not have a “selective application” to one theory of causation. However, considering the evi *242 dence outlined above, and given the fact that there is no evidence of a congenital abnormality in the plaintiffs arm and no evidence that she was involved in weightlifting or some other strenuous exercise program before her abdominal surgery that could have caused the injury, we cannot hold, in keeping with our standard of review, that the plaintiffs injury could, with equal probability, be attributed to a cause other than negligence on the part of the hospital’s personnel.
For the foregoing reasons, the judgment is reversed and the ease is remanded for further proceedings consistent with this opinion.
MOTION TO DISMISS APPEAL DENIED; REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, KENNEDY and COOK, JJ., concur.

. Although Dr. Hoekenberry testified that the treatment of a compressed nerve, such as the plaintiff's, was outside his general area of expertise,- he is, nonetheless, a licensed, board certified general surgeon, trained and experienced in the same specialty as Dr. Kenneth Copeland, the surgeon who performed the abdominal surgery on the plaintiff. Dr. Hoekenberry is, therefore, a "similarly situated health care provider” under § 6-5-548(c). In any event, it does not appear from the record that the hospital challenged Dr. Hockenberry's testimony by a motion to strike. See Chatham v. CSX Transportation, Inc., 613 So.2d 341 (Ala. 1993).